IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EUSEBIO MARTINEZ RAMIREZ, JR., #49842-177, MOVANT, | § § § § | |
| v. | § § | CASE NO. 3:17-CV-2348-B-BK (CRIMINAL NO. 3:14-CR-266-B-18) |
| UNITED STATES OF AMERICA, RESPONDENT. | § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the entry of findings and a recommended disposition. As detailed herein, the motion should be **DENIED**.

**I.   BACKGROUND**

Movant Eusebio Martinez Ramirez, Jr., pled guilty to conspiring to possess with the intent to distribute 500 grams or more of methamphetamine and was sentenced to 210 months' imprisonment and a five-year term of supervised release. Crim. Doc. 1215. Although he timely filed a direct appeal, he subsequently consented to dismiss that appeal. Crim. Doc. 1635. Ramirez later filed the instant *pro se* Section 2255 motion on September 1, 2017, asserting ineffective assistance of counsel. Doc. 2; Doc. 3 at 3-7. The Government filed a response in opposition, claiming that his grounds are vague and conclusory and, in any event, fail on the merits. Doc. 6. Ramirez filed a reply along with his own affidavit. Doc. 10. Upon review of

the pleadings and applicable law, Ramirez has failed to demonstrate that counsel was ineffective and, thus, his Section 2255 motion fails on the merits.

## II. ANALYSIS

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697.

To prove the deficient performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process," that is, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In addition, to be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In determining

the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Shepherd*, 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence"). A defendant ordinarily may not refute his sworn testimony given at a plea hearing while under oath. *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998). A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

    A.  **Ineffective Assistance and Voluntariness of Guilty Plea**

Ramirez asserts that counsel rendered ineffective assistance in advising him to plead guilty. He makes the related arguments that counsel: (1) in light of Ramirez's "evident language barriers, failed to fully articulate his right to trial, and the consequences of entering a guilty plea," (2) failed to "fully advis[e] [Ramirez] of the right to trial . . . [and] explain the Sentencing Guidelines, especially the impact of relevant conduct, foreseeability, importation, acceptance of responsibility, etc. on the sentence," and (3) "failed to advise [Ramirez] that the agreed upon [d]rug [w]eight in the plea agreement could be significantly enhanced by the findings of a Judge vs. being put to a Jury." Doc. 3 at 3-4.

In his reply, Ramirez avers that "his plea was not knowingly or voluntarily" entered and that "his limited functional use of English language, resulted in a miscarriage of justice during

his plea proceedings." Doc. 10 at 1. In the affidavit filed with his Reply, Ramirez attests for the first time:

> 4. My counsel and I struggled in our communications due to my limited grasp of the English language. Even now I am in GED classes in the BOP struggling with English writing and reading.
>
> 5. During my plea proceedings and subsequent hearings I was coached on what words to say during the hearing, and to essentially answer everything in the affirmative.
>
> 6. My counsel did not spend any time with me reviewing any of the relevant plea documents, applicable guidelines, or the consequences of signing the plea agreement.
>
> 7. I was simply told to sign here, and how to answer questions.

Doc. 10 at 4.

The record belies Ramirez's assertions. First, the record of the re-arraignment and sentencing hearings confirm that Ramirez's primary language was English, specifically: (1) Ramirez was born and attended school in Texas, Crim. Doc. 1453 at PSR ¶¶ 45, 72, 83, (2) he conversed with the Court at re-arraignment and sentencing in English, without an interpreter, and (3) affirmed under oath at re-arraignment that he could read and write in English. Crim. Doc. 1129 at 4. The fact that, since his incarceration, he supposedly struggles in his GED reading and writing classes does not support his bare assertion that he faced difficulties in communicating with his counsel during the guilty plea proceedings.

Moreover, Ramirez's assertions that his plea was invalid is unconvincing. In his plea agreement, Ramirez affirmed that his plea of guilty was freely and voluntarily made and that he was fully satisfied with his lawyer's legal explanations of the plea agreement, his rights affected by the agreement, as well as alternatives available to him other than entering into the plea agreement. Crim. Doc. 735 at 5-6. Ramirez repeated these affirmations at rearraignment. Crim.

Doc. 1129. He admitted under oath that he understood the elements of the offense to which he was pleading guilty and confirmed that: (1) he had reviewed the plea agreement with counsel and understood all of its provisions; (2) no one had made any promises to induce him to enter into the plea agreement; and (3) he was freely and voluntarily pleading guilty. Crim. Doc. 1129 at 10-11. Petitioner also confirmed that he reviewed the factual resume before signing it, and that the stipulated facts contained in it were true. Crim. Doc. 1129 at 16. He further averred that he was fully satisfied with his counsel's advice. Crim. Doc. 1129 at 9.

Petitioner affirmed that he understood that by pleading guilty to Count 3 of the indictment he was subject to a full range of punishment—namely a maximum sentence of 10 years to life imprisonment—and that he had discussed the sentencing guidelines with counsel. Crim. Doc. 1129 at 7, 14. Petitioner averred that he understood that the Court would determine and assess his sentence after considering the PSR and consulting the Sentencing Guidelines, Crim. Doc. 1129 at 7, and that he would be bound by his plea even if the sentence was higher than he expected, Crim. Doc. 1129 at 15.

Besides his belated, self-serving assertions, Ramirez offers no reliable evidence to rebut the record and the Court's finding that his guilty plea was knowing and voluntary. Crim. Doc. 1129 at 17. Moreover, because his statements are uncorroborated, they are insufficient to overcome his sworn testimony and conduct during the Rule 11 hearing. *See Cervantes*, 132 F.3d at 1110 (movant must produce "independent indicia of the likely merit of [his] allegations" to overcome the rearraignment testimony and plea agreement that refuted his allegations).

Additionally, contrary to his assertion, Ramirez did not sign a plea agreement accepting responsibility for only a specified drug weight. Crim. Doc. 735. While the factual resume stipulates that during the conspiracy, Ramirez possessed with intent to deliver 500 grams or more

Page 5 of 11

of methamphetamine, Crim. Doc. 737 at 6, he acknowledged at rearraignment that the probation officer, in preparing the PSR, could disregard the facts agreed to in the factual resume or consider other facts not agreed to by the parties. Crim. Doc. 1129 at 8. The magistrate judge cautioned that if that happened, Ramirez might not be able to withdraw his plea, but would have the opportunity to object to the findings and conclusions in the PSR. Crim. Doc. 1129 at 8. Furthermore, Ramirez affirmed: (1) he had discussed with his counsel how the sentencing guidelines might apply in his case; (2) he understood that he could not depend on any statement from anyone, including his attorney, as to what sentence would be imposed, and (3) that only the district judge would decide his sentence. Crim. Doc. 1129 at 7. Clearly, Ramirez's unsupported assertions that counsel misadvised him about his plea are contradicted by his attestations in the plea agreement and under oath at rearraignment.

Accordingly, the Court concludes that Ramirez has failed in his burden to establish that his guilty plea was not knowing and voluntary, let alone that counsel was ineffective. Thus, his first claim of ineffective assistance of counsel fails.

### B. Ineffective Assistance of Counsel at Sentencing

Next, Ramirez asserts counsel rendered ineffective assistance when he failed to argue at sentencing that Ramirez was entitled to a "substantially minor role in the conspiracy" based on Amendment 794 to USSG § 3B1.2.[1] Doc. 3 at 6. Ramirez avers that he was "a very low level participant in the whole of the conspiracy" and, thus, significantly less culpable than the average participant in the criminal activity. Doc. 3 at 6. However, he points to no evidence

---

[1] Amendment 794, which became effective on November 1, 2015, before his sentencing, did not alter the text of U.S.S.G. § 3B1.2, but merely clarified that the court should compare the defendant's role to that of the other participants in the criminal activity at issue, rather than that of participants in other, similar crimes. USSG §3B1.2, comment 3(A).

demonstrating that he was a minor participant and the record plainly disproves his bare assertions.

According to the PSR, which the Court accepted without change, Ramirez was involved in 15 deliveries of methamphetamine actual, totaling 2.38 kilograms. Crim. Doc. 1020-1 at 14, PSR ¶ 39; Crim. Doc. 1216 at 1 (*Statement of Reasons*). And at sentencing, the District Judge stressed that he was involved in high-level drug dealing—"not on the periphery, not one time, not delivering here and there, just right in there helping make it happen under some of the big level players over and over and over again, high amounts of money, large amounts of methamphetamine." Crim. Doc. 1453 at 35. Based on the Court's factual findings, Ramirez cannot demonstrate counsel's deficient performance or resulting prejudice because the evidence simply does not support his contention that he was eligible for either the minimal- or minor-participant adjustment. U.S.S.G. § 3B1.2 cmt. n.3(A) (providing a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant"). Further his belated reply argument (indeed, scurrilous and unsupported supposition)—that the District Judge "may have been biased towards someone of Mexican descent," like himself, because she assumed the methamphetamine came from Mexico—simply does not advance his claim. Doc. at 10 at 1.

In sum, because Ramirez would not have been eligible for an offense-level reduction under § 3B1.2, defense counsel was not ineffective for failing to seek such an adjustment. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (counsel is not ineffective for failing to raise a frivolous objection); *United States v. Lewis*, 467 F. App'x 298, 299 (5th Cir. 2012) (per curiam) (same as to meritless guideline objection). Therefore, his second claim has no merit.

### C. Ineffective Assistance of Appellate Counsel

Ramirez also asserts that he received ineffective assistance when his appellate counsel moved to dismiss his direct appeal with Ramirez's written consent that read:

> I have been informed of my attorney's intention to move to dismiss my appeal bearing the No. 16-10855.
>
> I concur in my attorney's decision and hereby waive all rights to object or raise any points on appeal in the case bearing the No. 16-10855.

Doc. 7 at 11 (Gov's Appx at 9).

Ramirez now contends that "counsel was ineffective for failing to . . . full[y] pursue an appeal on [his] behalf" and that counsel "erroneously advised him that an appeal was not possible due to his plea agreement despite [his] desir[e] to pursue an appeal." Doc. 3 at 4. Ramirez surmises:

> Counsel was not forthcoming to Petitioner in his reasoning for getting his appeal dismissed so that he could withdraw from the criminal proceedings. Petitioner's comprehension of English is extremely limited, and while a trusted advisor simply may state sign here and sign here on important waiver of constitutional rights, counsel was not adequate in consulting about the true nature of his actions.

Doc. 3 at 5.

Belatedly, in the affidavit submitted with his reply, Ramirez avers:

> 8. After my sentencing my lawyer sent me a letter and told me to sign it regarding my appeal, at no time did he make me aware that I was withdrawing my appeal.
>
> 9. I specifically asked my lawyer to appeal my sentence and conviction, as evidenced by him filing the initial notice of appeal.
>
> 10. It was only after seeking the help of spanish speaking law clerks at the prison did I learn that my appeal was withdrawn because my lawyer took advantage of me.
>
> 11. I did not willingly withdraw my appeal, and if I would have known my lawyer was doing what he was doing, I would have had proceeded pro-se.

Doc. 10 at 4.

To successfully assert a claim that appellate counsel was ineffective, Ramirez must show that (1) his counsel acted unreasonably in failing to discover nonfrivolous issues for appeal and (2) he suffered prejudice, namely that there is "a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." *See Smith v. Robbins,* 528 U.S. 259, 285-86 (2000) (citing *Strickland,* 466 U .S. at 694). Moreover, "appellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 288.

Here, the waiver/consent-to-dismiss letter refutes Ramirez's assertions. As it plainly states, Ramirez not only concurred in his appellate attorney's decision to voluntarily dismiss the appeal, but "waive[d] all rights to object or raise any points on appeal." Moreover, as previously concluded, Ramirez faced no "language barrier" because the record confirms that his primary language was English. Finally, Ramirez's belated, self-serving assertion that he did not want to dismiss his appeal remains completely uncorroborated. *See Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring "independent indicia of the likely merit of [the movant's] allegations, typically in the form of one or more affidavits from reliable third parties" to justify an evidentiary hearing).

Even assuming counsel's performance was deficient, Ramirez has not demonstrated any resulting prejudice. Specifically, Ramirez has not suggested any non-frivolous issue for appeal, much less shown that he would have prevailed on appeal. Accordingly, his third claim likewise fails.

### III. EVIDENTIARY HEARING

In his reply, Ramirez contends for the first time that he is entitled to an evidentiary

hearing. Doc. 10 at 2. He is wrong, however. "When the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))). Accordingly, because Ramirez's claims lack merit for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding. *See United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018) (no evidentiary hearing required if "(1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true").

### IV. CONCLUSION

The Section 2255 motion should be **DENIED** and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on October 18, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).